UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

UNITED AUTOMOBILE INSURANCE )
COMPANY, )
)
Plaintiff, )
)
v. )         No. 1:19-cv-00956-SEB-MPB
)
METZGER ROSTA, LLP, )
THOMAS E. ROSTA, )
)
Defendants. )

## ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

Plaintiff United Automobile Insurance Company ("UAIC") initiated this legal

malpractice lawsuit against Defendants Metzger Rosta, LLP and Thomas E. Rosta

(collectively, "Rosta" unless context requires otherwise) on March 7, 2019, invoking our

diversity jurisdiction.[1] Now before the Court are cross-motions for partial summary

judgment. For the reasons set forth herein, UAIC's motion is **granted in part and denied**

**in part**, and Mr. Rosta's cross-motion is **denied.**

## Factual Background

### I.    Ms. Wiley's Collision With the Sellerses

On June 28, 2013, Brieane Wiley's ("Ms. Wiley") car rear-ended a car driven by

Mary Sellers ("Ms. Sellers"). Ms. Sellers's son, Joshua Sellers ("Joshua") was a passenger

in her car at the time of the accident. Ms. Wiley was alone in her vehicle. A police officer

---

[1] UAIC also named Joseph Stalmack and Joseph Stalmack, PC as defendants. UAIC has
reportedly reached a settlement with these defendants, prompting their dismissal from this
lawsuit. We nonetheless incorporate facts relating to the Stalmack defendants as necessary to
understand and resolve the pending motions.

responding to the collision found that Ms. Wiley had been "following too closely," and that Ms. Sellers did not contribute to the accident. [UAIC Exh. 3; Rosta Exh. 15]. Ms. Sellers did not suffer any visible injuries, though she complained of chest pain. Joshua incurred an abrasion on his head. [*Id.*].

At the time of the accident, Ms. Wiley maintained an automobile insurance policy with UAIC, which provided $25,000 in personal-injury coverage and $50,000 per collision. [Pl. Ex. 4]. This policy also established UAIC's contractual duty to defend Ms. Wiley against any claims within the contract's purview. On July 2, 2013, Ms. Wiley promptly notified UAIC of her collision with the Sellerses. [Pl. Exh. 15; Def. Exh. 17].

Following the Collision, Ms. Sellers retained attorney Michael Galanis to represent her and her son in any claims arising from this accident. Mr. Galanis informed UAIC that Ms. Sellers had incurred $353 in medical expenses. [Pl. Exh. 5]. On October 1, 2013, Mr. Galanis transmitted a second notice to UAIC, indicating that Ms. Sellers's medical bills had increased to a current total of $7000. [Pl. Exh. 6]. Neither communication included a settlement demand nor confirmation of the full amount Ms. Sellers had personally paid toward her medical expenses. UAIC responded to Mr. Galanis on October 24, 2013, requesting, upon completion of Ms. Sellers's medical treatment, a "prompt settlement demand along with any preliminary medical records and . . . occupation and wage loss information." [Pl. Exh. 7].

Thereafter, several communications were exchanged between UAIC and Mr. Galanis, wherein Ms. Sellers's injuries and lost wages were discussed, the costs associated therewith totaled $3213.44. [Pl. Exh. 7, 8]. On February 28, 2014, UAIC

extended an offer of $3000 to Ms. Sellers to settle her claims. [Pl. Exh. 9, 10, 11; Def. Exh. 18]. Mr. Galanis made no response to this offer. Unbeknownst to UAIC, he had previously initiated a lawsuit against Ms. Wiley on behalf of the Sellerses on January 29, 2014, in Lake Superior Court (Indiana) (the "State Court Litigation"). [Def. Exh. 21]. Though Ms. Wiley reports that she mailed a copy of the summons and complaint to UAIC, UAIC denies having ever received any notice that a lawsuit had been filed. [Wiley. Int. Res., p. 7-8]. Allegedly unaware of the litigation against Ms. Wiley, UAIC did not assign counsel to defend her. [Pl. Exh. 15].

## II.   UAIC Retains Mr. Rosta, and Ms. Wiley Reaches an Agreement With the Sellerses

Believing that "everything was being taken care of by UAIC," Ms. Wiley failed to appear or otherwise defend herself in the State Court Litigation, and an Order of Default was therefore entered against her on July 14, 2014, which order was amended on August 7, 2014. [*Id.*; Pl. Exh. 16]. On August 22, 2014, UAIC, after "check[ing] the [c]ourt site" to confirm that no suits had been filed against Ms. Wiley, closed her claim file for "lack of interest." [Def. Exh. 17, at 31].

In the interim, the Sellerses retained new counsel, Donald Wruck, who, nine months after the Order of Default had been entered against Ms. Wiley, wrote to UAIC on May 18, 2015, notifying it of the default as well as the fact that the case was scheduled for a bench trial to determine damages. Mr. Wruck's transmittal of this information was coupled with an invitation to engage in settlement discussions. [Pl. Exh. 18]. Following his receipt of information, UAIC Claims Adjuster Norman Schwartzman hired Mr. Rosta,

an insurance defense attorney, providing to him written instructions to defend Ms. Wiley. Mr. Rosta was specifically directed to "verify proper service," "enter an appearance," and "move to set [the default] aside." [Pl. Exh 19, Def. Exh. 56]. UAIC further communicated to Mr. Rosta that it could evaluate and produce a settlement offer once Mr. Rosta obtained all of Ms. Sellers's relevant medical information. [*Id.*]. UAIC's final instruction was for Mr. Rosta to produce "an initial status report within 30 days" and to furnish additional reports "at least every 60 days that provide information on all development since the prior report," including " a "plan of action on how the lawsuit will move forward." [*Id.*] Ms. Wiley was mailed a copy of this communication. [*Id.*].

Mr. Rosta agreed to represent Ms. Wiley, but what occurred thereafter is in dispute.

The parties disagree as to whether Mr. Rosta ever attempted to contact Ms. Wiley. According to Mr. Rosta, he directed his paralegal, Ms. Jen Bunner, to call Ms. Wiley. Though he testified that Ms. Bunner "attempted to speak with her," his interrogatory responses reflect his uncertainty as to whether any attempts were actually made. [Pl. Exh. 12, Rosta Depo, at p. 111, 122-23; Pl. Exh. 24; Def. Exh 30., Rosta Depo, at 126-129]. Ms. Bunner cannot recall whether she was given this instruction or whether she made the call. Had she called Ms. Wiley and spoken with her or left a voicemail for her, she would have billed for that time; had Ms. Wiley's phone number been disconnected or her contact information incorrect, Ms. Bunner would have informed Mr. Rosta of such. [Pl. Exh. 23, Bunner Depo., at p. 50-51, 57, 61]. However, no time was ever billed for a phone call to/with Ms. Wiley, and there is no indication that Ms. Bunner ever informed

Mr. Rosta that the telephone number for Ms. Wiley was invalid for any reason. [*See* Pl. Exh. 25].

Regardless of whether those attempts were made, it is undisputed that no representative of Mr. Rosta's office ever spoke to or otherwise communicated with Ms. Wiley. It is also undisputed that Mr. Rosta's office never transmitted any letters to Ms. Wiley by regular or certified mail, though his office protocol for contacting clients in insurance defense cases would typically have included issuing a letter via regular mail as well as a follow up letter via certified mail, calling the client, and even hiring a private investigator, if needed. [Pl. Exh. 12, Rosta Depo. 105-106, 109].

Mr. Rosta has testified that, within a few weeks of his acceptance of Ms. Wiley's case, he was verbally instructed by Mr. Schwartzman to "stand down" from litigating it. The purported basis for this instruction, according to Mr. Rosta, was that UAIC had realized that it was dealing with a "clear liability case" with "nominal value," so Mr. Schwartzman intended to attempt to settle it without the assistance of counsel. [Def. Exh 30, Rosta Depo, at 126-129]. Citing this alleged instruction to "stand down," Mr. Rosta took no actions, beyond allegedly instructing Ms. Bunner to telephone Ms. Wiley, between May 20, 2015 and February 18, 2016, with respect to litigating the case. Mr. Schwartzman denies having issued any "stand down" instruction.

Meanwhile, on June 8, 2015, Ms. Wiley faxed a copy of a court order to UAIC which indicated that a status hearing in the State Court Litigation was scheduled for July 17, 2015. [Pl. Exh. 26; Def. Exh. 32]. She included with her fax a handwritten note stating that she could not afford an attorney. [*Id.*]. No representative of UAIC responded

to Ms. Wiley. Mr. Schwartzman, however, did send an email to Ms. Kari Wakeland—

Ms. Rosta's office manager, whose only involvement with cases or insurance adjusters

pertained to invoices— with the subject line "TRIAL COUNSEL." The body of the email

was empty, and it did not include Ms. Wiley's fax nor notice of the status conference;

instead, Mr. Schwartzman's email attached only a copy of the default order as well as Mr.

Wruck's May 18, 2020 letter.  [Def. Exh. 34]. The email was not sent to Mr. Rosta, his

paralegal, or his legal assistant. Ms. Wakeland testified that it would have been "very

unusual" for her to receive substantive emails related to the law firm's cases, though her

practice in such instances would have been to immediately forward such emails to Mr.

Rosta. [Pl. Exh 61, Wakeland Depo., p. 14-15; Def. Exh. 58, Wakeland Depo. p. 8-10,

14-15]. She has no specific recollection of receiving this email, however, and Mr. Rosta

maintains he never received any notice of it. [*Id.*; Def. Exh. 59, ¶¶ 2-3]. In any event, it is

uncontested that Mr. Schwartzman's email contained no reference to Ms. Wiley's fax or

the upcoming court status conference.

 Around this same time, UAIC transferred Ms. Wiley's claim file to Zuzana

Berrios, a claims adjuster at UAIC with a reputation of falling behind on her work. [Def.

Exh. 40, p. 18-19]. Ms. Schwartzman forwarded Ms. Wiley's June 8, 2015 fax to Ms.

Berrios, but she likewise did not respond to Ms. Wiley nor follow up with Mr. Rosta's

office. [*See* Def. Exh. 33].

Ms. Wiley appeared for the July 17, 2015 status hearing *pro se* and soon thereafter

retained private counsel, Geoffrey Giorgi. [*See* Pl. Exh. 15, Pl. Exh. 29]. On August 20,

2015, Attorney Wruck filed a "Damages Brief" on behalf of Ms. Sellers, seeking a

combined damages award for Mary and Joshua Sellers between $762,877 and $883,797. [Pl. Exh. 30; Def. Exh. 37]. UAIC maintains that had Mr. Rosta appeared in the litigation, the Damages Brief could have been contested on various grounds. For example, says UAIC, Mr. Rosta could and should have contested the fact that the majority of claimed damages were predicated on the Sellerses' affidavits rather than medical records, as well as the fact the requested damages award was exponentially greater than the actual medical expenses incurred by the Sellerses, which totaled approximately $5448. [Pl. Exh. 30, 34-107]. However, such alleged deficiencies, among others, in the Sellerses' Damages Brief went unchallenged.

Ms. Wiley and the Sellerses signed a settlement agreement the next day, August 21, 2015, agreeing to the damages range sought in the Sellerses' Damages Brief. Ms. Wiley further agreed to consent to an entry of final judgment against her. In exchange for a covenant not to execute this judgment, Ms. Wiley assigned her rights against UAIC to the Sellerses. [Def. Exh. 38].

In December 2015—seven months after Mr. Rosta had been retained and four months after Ms. Wiley had signed the settlement agreement with the Sellerses—Mr. Rosta and UAIC reconnected for the first time since Mr. Rosta's retention. On December 15, 2015, Ms. Berrios emailed Mr. Rosta to request an update on Ms. Wiley's case. [Pl. Exh 31; Def. Exh. 39]. Mr. Rosta responded that his office "ha[d] been trying (unsuccessfully) to get in touch with [Ms. Wiley]" to determine if UAIC had a "viable and meritorious defense." He informed Ms. Berrios he would "check the docket tomorrow and advise." [Def. Exh. 39].

Not until two months later, on February 18, 2016 did Mr. Rosta check the state court docket, which disclosed that Ms. Wiley had retained private counsel and that a final damages hearing was scheduled before the court for March 29, 2016. Mr. Rosta emailed Ms. Berrios that same day to report this information, stating that he would attempt to confer with Ms. Wiley's counsel and attend the damages hearing. [Pl. Exh. 33, Exh. 41, p. 2; Def. Exh. 41]. Mr. Rosta confirmed "[t]his is not a huge case" and "[t]he injuries are nominal so we may need to just attend the damages hearing and see what we can do." [Pl. Exh. 33; Def. Exh. 41].

Mr. Rosta testified that he had a telephone call with Ms. Berrios around this same time, during which he informed her that Mr. Schwartzman had previously instructed him to "stand down." [Def. Exh. 30, p. 207-208]. According to Mr. Rosta, the communications from Ms. Berrios in December 2015 provided the directive that he reinvolve himself in Ms. Wiley's case. [*Id.* at 238]. Ms. Bunner recalls Mr. Rosta voicing that he had been told to "stand down" by Mr. Schwartzman, though she cannot remember when Mr. Rosta made this statement. She does recall, however, having the sense that there had been a "disconnect" between the claims adjusters, given that Mr. Schwartzman had purportedly issued his "stand down" instruction yet Ms. Berrios was requesting a status update. She further recollects Mr. Rosta expressing his regrets for failing to request that Mr. Schwartzman memorialize his instructions in writing. [Def. Exh. 65, Bunner Depo., at p. 69-73, 76].

Mr. Rosta's attempt to confer and collaborate with Mr. Giorgi on Ms. Wiley's defense did not prove to be fruitful. As Mr. Giorgi explained to Mr. Rosta on March 10, 2016:

> Ms. Wiley does not believe she can be represented by your firm at this late date given your retention by [UAIC] and [UAIC's] failure to uphold the insurance contract resulting in the default. All you can do at this point is let [UAIC] know that Brieane has retained her own counsel to protect her interests, including any claims she may have against [UAIC].
>
> Given these circumstances and conflict, Ms. Wiley had directed that your firm is not authorized to represent her with respect to this action[.]
>
> [ . . . ]
>
> She requested and desired for [UAIC] to defend her consistent with her policy of insurance when the case arose and prior to default being entered. [UAIC] then breached the insurance contract by failing to do so, and exposed her to the default . . . There may well be bad faith and breach claims that Brieane has against [UAIC], creating a conflict of interest at this date given [UAIC's] failure to timely defend her.
>
> [ . . . ]

[Pl. Exh. 34].

Mr. Rosta forwarded the email to Ms. Berrios the next day, informing her that he was "sick over it" and "should have followed up with Norman." She confirmed that she also "should have followed up with [Mr. Rosta] sooner[.]" [Pl. Exh. 34; Def. Exh 42].

At this time, UAIC reassigned the case to a new claims adjuster, Christopher Dowd, who requested that Mr. Rosta send UAIC "an outline of the contact attempts [he] made to the insured and a copy of any letters." [Pl. Exh. 34; Def. Exh. 42]. Notwithstanding his subsequent deposition testimony that only a single attempt was made by his office to contact Ms. Wiley, Mr. Rosta responded to Mr. Dowd that "no letters

were sent – all efforts were made by phone pursuant to my discussion with my paralegal and she advised that there is no way to gauge date and times but that she tried on numerous occasions." [*Id.*].

### III.     UAIC Retains Mr. Stalmack and Initiates a Declaratory Judgment Action

On March 17, 2016, the Sellerses and Ms. Wiley filed a joint stipulation in the State Court Litigation consenting to the entry of judgment without a final hearing on damages. They specifically agreed to final judgment in favor of the Sellerses "in an aggregate amount of not less than $772,877 and not more than $883,797." [Pl. Exh. 36; Def. Exh. 45]. That same day, Mr. Joseph Stalmack entered his appearance in the State Court Litigation on behalf of UAIC, simultaneously filing an emergency motion to intervene. [Pl. Exh. 29, at 4]. Mr. Stalmack, on March 22, 2016, advised UAIC that its exposure was minimal given the deficiencies in the Sellerses' Damages Brief, the limited injuries suffered by the Sellerses, and the nominal medical expenses that the Sellerses had actually  incurred. [Pl. Exh. 37].

With Mr. Stalmack now representing its interests, the Sellerses and UAIC engaged in mediation. However, their settlement efforts were unsuccessful, with the Sellerses demanding $700,000 in damages, UAIC issuing a $100,000 offer, and Mr. Rosta's legal malpractice insurer offering to contribute $25,000. [Pl. Exh. 38].

Following this attempt at reaching a mediated settlement, Mr. Stalmack advised UAIC to withdraw its motion to intervene and instead "recommended [] fil[ing] a declaratory judgment action, based on Wiley's breach for failure to provide timely notice and secondly, entering into an unauthorized agreement in violation of the policy." [Pl.

Exh. 39; Def. Exh. 5]. He further advised that the consent judgment could be challenged on reasonableness grounds. [*Id.*]. Consistent with this advice, UAIC authorized the withdrawal of its motion to intervene and initiated a declaratory judgment action in the Northern District of Indiana on September 2, 2016 ("Declaratory Judgment Litigation"). UAIC's one-count complaint sought a judicial declaration that UAIC owed no coverage to Ms. Wiley based on: 1) her failure to provide notice of the lawsuit; 2) her failure to cooperate when Mr. Rosta attempted to provide a defense; and 3) her execution of the settlement agreement with the Sellerses, in violation of her policy with UAIC. [Pl. Exh. 41].

The same day that UAIC initiated the Declaratory Judgment Litigation, September 2, 2016, Attorney Wruck (the Sellerses' attorney), notified Attorney Stalmack that "an offer in the 200s" could "get [the case] wrapped up." [Def. Exh. 12]. On September 21, 2016, Mr. Stalmack emailed Mr. Dowd to convey this offer. Mr. Stalmack advised Mr. Dowd that he believed "$200,000 is on the high end of the value of this case." Mr. Stalmack further informed Mr. Dowd that UAIC had a viable "reasonableness" defense against any bad faith claim, though he failed to inform Mr. Dowd that the Sellerses also had a viable breach of contract claim, to which reasonableness would not be a defense. [*Id.*].

Following this exchange, on October 4, 2016, the state court entered final judgment awarding $823,344.00 to the Sellerses. The court also awarded post-judgment interest at eight-percent per annum. [Pl. Exh. 42; Def. Exh. 49].

Thereafter, on November 3, 2016, the Sellerses did, in fact, file counterclaims asserting against UAIC of both bad faith and breach of contract. UAIC, through Mr. Stalmack, filed its answer on November 23, 2016, asserting two affirmative defenses: 1) Ms. Wiley committed the first material breach of the policy, barring liability against UAIC for any subsequent breach; and 2) a non-party defense naming Mr. Rosta and his firm as non-parties with fault. Mr. Stalmack assured UAIC that he had raised a viable non-party defense; however, Mr. Stalmack later acknowledged that this assurance was misplaced because non-party defenses are inapplicable to breach of contract claims. [Pl. Exh. 44; Pl. Exh. 77]. Additionally, because Mr. Rosta was acting as UAIC's agent at the time of his alleged malpractice, the non-party defense was unavailable to mitigate UAIC's exposure for the bad faith claim against them by the Sellerses. Despite having advised UAIC that it could challenge the state court judgment on unreasonableness grounds, Mr. Stalmack pled no such defense. [Def. Exh. 50, Exh. 51].

Nearly a year into the Declaratory Judgment Litigation, on September 17, 2017, Mr. Wruck again initiated settlement discussions, notifying Mr. Stalmack on October 4, 2017, that the Sellerses had reduced their settlement demand to $265,000. [Def. Exh. 2; Exh. 52]. Mr. Stalmack informed UAIC of this reduced demand; he did not, however, advise UAIC regarding the limitations of their non-party defense, nor did he amend his previous advise that $200,000 was on the "high-end" of the lawsuit's value. Mr. Stalmack maintained to UAIC that it had a "better [than] an average chance of success" in the litigation. [Pl. Exh. 38; Def. Exh. 3]. Relying on Mr. Stalmack's advise, UAIC rejected the demand and declined to issue a counteroffer. UAIC later conceded that but for Mr.

Stalmack's failure to advise it of the shortcomings of it non-party defense, it would have accepted the $265, 000 demand. [Pl. Exh 14; Exh. 46; Def. Exh. 1.].

Not until July 31, 2018, some twenty months after the initiation of the Declaratory Judgment Litigation and nine months after UAIC rejected the Sellerses' reduced demand, did Mr. Stalmack research whether an insurer could be held liable for the conduct of its assigned attorney. The next day, Mr. Stalmack provided UAIC with a memorandum outlining his newfound understanding that UAIC could, indeed, face such liability for any wrongs committed by Mr. Rosta. He explained that he "now believe[d] that [] we are responsible for his wrongs," and thus UAIC could not benefit from any set-off based on its non-party defense. [Pl. Exh. 48; Def. Exh. 10]. This was the first notification to UAIC that it could be responsible for the actions of Mr. Rosta as its agent. Mr. Stalmack further informed UAIC that he had failed to plead an affirmative defense attacking the unreasonableness of the consent judgment, which failure, he advised, could inhibit UAIC's ability to contest the Sellerses claimed damages. [*Id*.; Pl. Exh. 49]. Within a week of receiving this information, UAIC retained new counsel.[2]

---

[2] Mr. Rosta also presents several facts related to Mr. Stalmack's and UAIC's purportedly improper discovery conduct in the Declaratory Judgment Litigation. For example, he asserts that UAIC was not forthright in its interrogatory responses and that Mr. Stalmack did not sufficiently defend UAIC's Rule 30(b)(6) witness at his deposition. Mr. Rosta, however, does not provide adequate details such that we can understand the complete scope of the alleged discovery misconduct. He theorizes that this discovery conduct resulted in a "damaging court order that gave the Sellerses' momentum in the case," without elaboration as to what the aforementioned court order included or how it was linked to the specific instances of misconduct. We will not dig through the record to find support for this undeveloped theory, especially in light of his added failure to develop the relevancy of these facts in his legal analysis.

On February 7, 2019, UAIC, with the assistance of new counsel, finally reached a settlement with the Sellerses for $940,000. [Def. Exh. 13].

UAIC now seeks partial summary judgment, requesting that we hold Mr. Rosta liable for legal malpractice while reserving for a jury the determination of the apportionment of damages attributable to his malpractice. Mr. Rosta has cross-moved for partial summary judgment, asserting that based on the evidence before the Court any damages award against him must be capped at $265,000.

**Analysis**

## I.      Standard of Review

Summary judgment is appropriate where there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A court must grant a motion for summary judgment if it appears that no reasonable trier of fact could find in favor of the nonmovant on the basis of the designated admissible evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). We neither weigh the evidence nor evaluate the credibility of witnesses, *id.* at 255, but view the facts and the reasonable inferences flowing from them in the light most favorable to the nonmovant. *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1097 (S.D. Ind. 2008).

Courts often confront cross motions for summary judgment because Rules 56(a) and (b) of the Federal Rules of Civil Procedure allow both plaintiffs and defendants to move for such relief. In such situations, courts must consider each party's motion individually to determine if that party has satisfied the summary judgment standard. *Kohl*

*v. Ass'n. of Trial Lawyers of Am.*, 183 F.R.D. 475 (D. Md. 1998). Here, the Court has considered the parties' respective memoranda and the exhibits attached thereto and has construed all facts and drawn all reasonable inferences therefrom in the light most favorable to the respective nonmovant. *Matsushita*, 475 U.S. at 574.

## II.    Discussion

As noted, UAIC's Motion for Partial Summary Judgment seeks a determination that Mr. Rosta is liable for legal malpractice. Mr. Rosta concedes that he committed legal malpractice, but he nonetheless contends that UAIC's motion must be denied on the grounds that there are both undisputed and disputed facts bearing on UAIC's comparative fault. Mr. Rosta also seeks in his cross-motion an order holding as a matter of law that Mr. Stalmack's legal malpractice operated as a superseding cause, requiring any damages award against Mr. Rosta to be capped at $265,000.

### A.  UAIC's Motion for Partial Summary Judgment

UAIC contends in its motion for partial summary judgment that there exist no disputes of material fact respecting Mr. Rosta's legal malpractice, opening the way for a determination as a matter of law that Mr. Rosta is liable for at least a portion of the damages that it has sustained. Accordingly, UAIC requests a ruling that Mr. Rosta is liable and a finding that UAIC has suffered $992,558.61 in damages while reserving for trial the issue of Mr. Rosta's apportionment of these damages.

To prevail on this type of claim under Indiana law,[3] UAIC must prove the following elements: "(1) employment of an attorney, which creates a duty to the client; (2) failure of the attorney to exercise ordinary skill and knowledge (breach of the duty); and (3) that such negligence was the proximate cause of (4) damage to the plaintiff." *Mundia v. Drendall Law Office, P.C.*, 77 N.E.3d 846, 853 (Ind. Ct. App. 2017).

Here, Mr. Rosta does not dispute that UAIC has proven its *prima facia* claim of legal malpractice against him.

Specifically, Mr. Rosta does not dispute that he owed a duty to UAIC as his client. We agree that Mr. Rosta owed such a duty. *McGrath v. Everest Not. Ins. Co*., 2:07-cv-00034, 2009 WL 3080275 * 5 (N.D. Ind., Sept. 24, 2009) (collecting cases) ("Everest, as the insurer that  retained [attorney] is in privity with [attorney] and has the independent right to  sue the attorneys and the law firm for legal malpractice"). In addition, UAIC has proffered expert testimony that Mr. Rosta committed multiple breaches of this duty, to wit, by failing to make reasonable attempts to contact Ms. Wiley, by failing to promptly inform UAIC of his alleged inability to reach Ms. Wiley, and by failing to appreciate the need to act with urgency with respect to taking steps to have the default set aside. [*See* Pl. Exh. 51, McNeely Aff.; Pl. Exh. 52, McNeely Rep]. Mr. Rosta offers not rebuttal to UAIC's experts' finding through his own expert testimony, and that failure to do so is fatal to any contention he may seek to advance that he did not breach his duty. *See, e.g.*

---

[3] The parties agree that Indiana law governs.

*Am. Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1461, 1996 WL 339824 (7th Cir. 1996); *In re Estate of Lee*, 954 N.E.2d 1042, 1047 (Ind. Ct. App. 2011)

Mr. Rosta also leaves uncontested UAIC's factual contention that he was a proximate cause of at least some portion of UAIC's injuries. Though the issue of proximate causation is generally reserved for the jury, it may be decided at summary judgment in "plain and indisputable cases[.]" *Mundia v. Drendall Law Office*, P.C., 77 N.E.3d 846, 855 (Ind. Ct. App. 2017). Here, Mr. Rosta does dispute that he was a proximate cause of UAIC's damages, that is, that "the outcome of the underlying litigation would have been more favorable but for [his] negligence." *Barkal v. Gouveia & Associates*, 65 N.E.3d 1114, 1119 (Ind. Ct. App. 2016).[4] Had Mr. Rosta made contact with Ms. Wiley or notified UAIC of his alleged inability to do so, for example, or had he entered an appearance in the State Court Litigation and moved to set aside the default against Ms. Wiley, UAIC would clearly have fared more favorably in the State Court Litigation. We accept Mr. Rosta's concession that his malfeasances were a proximate cause of UAIC's injuries. Finally, the parties agree that UAIC's damages arising, in part, from Mr. Rosta's malfeasances totaled $992,558.61.[5]

---

[4] There is arguably record evidence that would have allowed Mr. Rosta to contest UAIC's motion on the grounds that the issue of proximate cause should be reserved for the jury; however, Mr. Rosta has refrained from advancing any theory to this effect, and we will not craft one on his behalf. *See Hedrick v. Tabbert, 722 N.E.2d 1269, 1273 (Ind. Ct. App. 2000).*

[5] This figure includes the amount paid toward the settlement with the Sellerses ($940,000.00) plus a portion attorneys' fees incurred in litigating the underlying cases ($102,558.61), less $50,000, that is, the policy limit of Ms. Wiley's policy with UAIC. As to the fees incurred, UAIC contends, and Mr. Rosta does not dispute, that the fees paid to Mr. Stalmack and UAIC's subsequent attorney in the Declaratory Judgment Litigation were foreseeable damages of Mr. Rosta's malpractice. UAIC does not seek recovery of the fees it paid Mr. Rosta, however, nor does it seek recovery of fees incurred in this litigation.

Because there is no dispute between the parties that Mr. Rosta's breaches of duty to UAIC were a proximate cause of UAIC's damages, [6] we conclude that UAIC has prevailed in establishing that Mr. Rosta committed legal malpractice.

Though Mr. Rosta has conceded that he was a proximate cause of UAIC's damages, he nonetheless maintains that by law we are foreclosed from entering partial summary judgment in favor of UAIC. His sole contention is that there remain disputes of material facts as to whether UAIC disregarded its duty to defend Ms. Wiley, that is, its contractual duty to ensure that Ms. Wiley was adequately represented in the State Court Litigation. *See Employers Ins. of Wausau v. Recticel Foam Corp*., 716 N.E.2d 1015, n. 17 (Ind. Ct. App. 1999); 4 Couch on Insurance § 202:17 (3d ed. 2007). Reasonable jurors, Mr. Rosta contends, could find that UAIC's own dereliction of this duty contributed to its injuries. To this end, Mr. Rosta asserts that UAIC has not shown that he was the *sole* proximate cause of the bungled defense of Ms. Wiley prior to Mr. Stalmack's representation of UAIC; rather UAIC shares in the responsibility for its losses.

To support his contention, Mr. Rosta directs us to Indiana's Comparative Fault Act, Ind. Code § 34-51-2-1, which provides that "each person whose fault contributed to cause injury bears his or her proportionate share of the total fault contributing to the injury." *Palmer v. Comprehensive Neurologic Servs*., P.C., 864 N.E.2d 1093, 1098 (Ind. Ct. App. 2007); Ind. Code § 34-51-2-5 ("In an action based on fault, any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as

---

[6] He also contends, as will be discussed in the next section, that he was a proximate cause of, at most, $265,000 in damages.

compensatory damages for an injury attributable to the claimant's contributory fault[.]"). Pursuant to Indiana's Comparative Fault Act, " the trier of fact can allocate fault to multiple contributing factors based on their relative factual causation, relative culpability, or some combination of both." *Dennerline v. Atterholt*, 886 N.E.2d 582, 598 (Ind. Ct. App. 2008). A comparative fault analysis addresses both proximate cause and damages, requiring, in these circumstances, a determination of whether and to what extent UAIC was proximate cause of its own injuries—questions that are generally reserved for the jury. *Parr Richey Obremskey & Morton v. Biomet, Inc*., 936 N.E.2d 367 (Ind. Ct. App. 2010); *see also Control Techniques, Inc. v. Johnson,* 762 N.E.2d 104, 109 (Ind. 2002). If fault lies with one or more parties, "the apportionment of fault is uniquely a question of fact to be decided by the factfinder." *Dennerline*, 886 N.E.2d at 598.

Because a reasonable jury could find that UAIC was partially at fault for its own injuries, Mr. Rosta insists we must deny UAIC's motion to the extent it seeks a determination that he (along with Mr. Stalmack) was the *sole* proximate cause of UAIC's damages. Only a jury may determine how the damages should be apportioned between the parties, insists Mr. Rosta.[7]

UAIC rejoins that even if such genuine disputes of material fact exist with respect to its fault, we may nonetheless grant its partial summary judgment motion, holding as a matter of law that Mr. Rosta committed legal malpractice, given that Mr. Rosta has not

---

[7] Mr. Rosta does not request a ruling that UAIC was, in fact, a proximate cause.

disputed as much, while leaving for trial the question of UAIC's comparative fault as well as the apportionment of damages. In any event, says UAIC, its hands are clean.

We agree with UAIC's contention that, even if a reasonable juror could find that some fault must be apportioned to it, we may grant its partial motion for summary judgment to the extent it seeks a ruling that Mr. Rosta committed legal malpractice. We reiterate that there is no dispute that UAIC has proven the *prima facie* elements of this cause of action, to wit, that Mr. Rosta owed a duty, that he breached this duty, and that his breach caused UAIC to suffer damages. There is no reason to keep unresolved the issues of whether Mr. Rosta's legal malpractice when the parties do not dispute the matter. Accordingly, UAIC's partial motion is granted in this regard.

We will reserve for the jury, however, all issues relating to the apportion of damages between UAIC and Mr. Rosta, including whether and to what extent any fault can be properly attributed to UAIC. The record before us obviously is rife with material factual controversies bearing on UAIC's fault that foreclose summary judgment on this issue. We shall not engage in a protracted analysis of these facts other than to note that a reasonable juror could find that UAIC is partially at fault based on, for example, its purported failures: to maintain communication with Mr. Rosta in the seven months that followed his retention or to otherwise stay apprised of Ms. Wiley's litigation during this time, including requesting 30-day and 60-say status reports from Mr. Rosta,[8] to ensure

---

[8] UAIC asserts that it is not at fault because its duty to defend Ms. Wiley did not require it to monitor her litigation once Mr. Rosta was retained. Accordingly, its failure to do so cannot be considered in the analysis of its fault, UAIC asserts. The case cited by UAIC as support does not reflect this narrow view of the duty to defend or otherwise relieve it of any fault in this litigation.

that Ms. Wiley's fax was appropriately responded to and forwarded to Mr. Rosta;[9] and to confirm that Mr. Rosta was representing Ms. Wiley following its receipt of the fax.[10] There are also disputed facts as to whether Mr. Schwartzman instructed Mr. Rosta to "stand down," and, viewing this dispute in the light most favorable to Mr. Rosta, a reasonable juror could believe that UAIC contributed to its injuries by issuing this directive,[11] followed by its inattentiveness to Ms. Wiley and her case in the following

---

*See R.C. Wegman Const. Co. v. Admiral Ins. Co.*, 629 F.3d 724, 730 (7th Cir. 2011). In any event, that case reviews Illinois law. *Id.* Indeed, UAIC has failed to cite a single  Indiana case that supports its argument that an insurer's duty to defend its insured is fulfilled with by the sole act of retaining in attorney, thereby rescuing the insurer from any liability. Such an argument has been rejected by at least one court within our circuit. *McGrath v. Everest Nat. Ins. Co.*, 668 F. Supp. 2d 1085, 1101, 2009 WL 3080353 (N.D. Ind. 2009); *see also McGrath v. Everest Nat. Ins. Co.*, 2010 WL 567301, at *8 (N.D. Ind. Feb. 11, 2010).

[9] UAIC asserts that Mr. Rosta represented in his interrogatory response that this fax would be used for the purpose of showing that UAIC had instructed him to stand down. It therefore argues that the jury will be foreclosed from drawing any other inferences from UAIC's purported failure to properly handle the forwarding of this fax, to wit, that UAIC was derelict in its handling of its insured. The case cited by UAIC, however, plainly does not support this view. *See Duncanson v. Wine & Canvas IP Holdings LLC*, 2018 WL 2733457, at *2 (S.D. Ind. Mar. 1, 2018).

[10] UAIC asserts that there is no evidence to suggest that Mr. Rosta would have performed differently had it taken any of these steps. In other words, UAIC argues that it is not at fault because even if it had, for example, requested a status update from Mr. Rosta, there is no evidence that he "would have acted differently." We agree with Mr. Rosta that UAIC's focus on what Mr. Rosta may or may not have done differently speculative and distorts the nature of UAIC's potential fault. The proximate cause issue with respect to UAIC's conduct turns on how the underlying proceedings would have unfolded but for UAIC's failures. *Gates v. O'Connor*, 111 N.E. 3d 215, 224 (Ind. Ct. App. 2018). Whether or not Mr. Rosta may have acted differently if UAIC had monitored Ms. Wiley's litigation with better care has little impact here. Instead, the jury must examine whether UAIC could have prevented or mitigated its own injuries if it had better supervised Ms. Wiley's litigation, for example, by retaining a new attorney sooner or redirecting Mr. Rosta.

[11] UAIC requests that we strike Mr. Rosta's testimony as to the stand down order, contending that it lacks any credibility. Though there may be ample basis in which to discredit Mr. Rosta's testimony on this issue before the jury, we obviously  "may not make credibility determinations, weigh evidence, or decide which inferences to draw from facts" at summary judgment." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (explaining that the court must "avoid[] the temptation to decide which party's version of the facts is more likely true."). UAIC maintains that we may disregard witness testimony at summary judgment where it is "blatantly contradicted by the

months. Resolving these questions is beyond the purview of the court on summary judgment and must be resolved by the final factor finder, to wit, the jury.

For these reasons, UAIC's motion for partial summary judgment is **granted in part.** We hold that UAIC is entitled to partial summary judgment, determining that Mr. Rosta did, in fact, commit legal malpractice. Whether and to what extent UAIC is at fault, however, we leave for the jury.

B.  Mr. Rosta's Cross-Motion for Partial Summary Judgment

We next review Mr. Rosta's cross-motion for partial summary judgment, which asserts that he cannot be held liable for any damages in excess of $265,000.

Mr. Rosta contends that Mr. Stalmack's legal malpractice[12] operated as a "superseding cause" of UAIC's damages any amount exceeding $265,000. [13] He

---

record, so that no reasonable jury could believe it[.]" *Scott v. Harris*, 550 U.S. 372, 380 (2007). In *Scott*, however, the contradictory record evidence was a video recording that underscored the party's testimony, not merely another witness's competing testimony, coupled with circumstantial evidence that a juror could rely on to discredit Mr. Rosta (for example, UAIC's contention that any stand down order would have been issued in writing, given that Ms. Wiley's case was referred to him in writing).

[12] For purposes of our ruling here, we accept the parties' stipulation that Mr. Stalmack committed legal malpractice by failing to properly apprise UAIC of its legal risks.

[13] Mr. Rosta also argues that UAIC has conceded that Mr. Stalmack was *the* proximate cause of UAIC damages after it rejected the $265,000 demand. Because he "accepts" UAIC 's admission that Mr. Stalmack proximately caused it to incur damages greater than $265,000, Mr. Rosta contends that we may limit his potential liability to $265,000, independent of any analysis as to superseding cause. Though UAIC agrees that Mr. Stalmack's actions proximately caused it to incur damages in excess of $265,000, it disagrees that it has conceded that Mr. Stalmack's malpractice was the *sole* proximate cause of these damages. Instead, it maintains that Mr. Rosta, by virtue of his alleged malpractice, also caused UAIC to incur  total damages in the sum of $992,558.61. Mr. Rosta does not revisit his contention that UAIC has "admitted" that he was not a proximate cause of these damages, and, in any event, we agree that UAIC had not conceded this issue. As UAIC has correctly explained, there may be multiple proximate causes of a single injury. *Sandberg Trucking, Inc. v. Johnson*, 76 N.E.3d 178 (Ind. Ct. App. 2017).

specifically asserts that that the chain of causation was broken when UAIC rejected,

pursuant to Mr. Stalmack's legal representation, the Sellerses' settlement demand in that

amount.

Under Indiana law, the doctrine of superseding causation provides "that when a

negligent act or omission is followed by a subsequent negligent act or omission so remote

in time that it breaks the chain of causation, the original wrongdoer is relieved of

liability." *Control Techniques, Inc. v. Johnson*, 762 N.E.2d 104, 107 (Ind. 2002). A

subsequent act is "superseding" when the harm resulting from the original negligent act

"could not have reasonably been foreseen by the original negligent actor." *Id.* ("A

superseding cause is, by definition, not reasonably foreseeable by a person standing in the

shoes of that actor."); *see also Estate of Pfafman v. Lancaster,* 67 N.E.3d 1150, 1157

(Ind. Ct. App. 2017).

In determining if Mr. Stalmack's legal malpractice operated as a superseding

cause, we must assess whether Mr. Stalmack's actions affected the chain of causation set

in motion by Mr. Rosta such that the damages incurred by UAIC in excess of $265,000,

were no longer reasonably foreseeable consequences of Mr Rosta's actions. *Control* 762

N.E.2d at 107. Determining proximate and superseding causation in this context "almost

always involves a fact-intensive analysis of foreseeability which often varies on the basis

of the unique circumstances and fact presented in each case." *Collins v. Manheim*

*Remarketing, Inc*., 1:14-cv-00056-SEB-TAB, 2016 WL 772638, at *6 (S.D. Ind. Feb. 18,

2016). Accordingly, the question of whether Mr. Stalmack's legal malpractice was a

superseding cause is another issue best decided by the jury; it is resolvable at summary

judgment only if all the relevant, material facts are undisputed so as to lead to a single inference or conclusion. *Id.*; *see also Scott v. Retz*, 916 N.E.2d 252, 258 (Ind. Ct. App. 2009).

The undisputed facts, contends Mr. Rosta, conclusively establish that UAIC's damages in excess of $265,000 were not a reasonably foreseeable consequence of Mr. Rosta's admitted malpractice; rather the actions of Mr. Stalmack broke the chain of causation. Mr. Rosta specifically asserts that it was not reasonably foreseeable that Mr. Stalmack would commit various acts of malpractice and effectively mislead UAIC as to the risk of its exposure and its likelihood of success in the Declaratory Judgment Litigation. It was Mr. Stalmack's unforeseeable malpractice that caused UAIC to reject the Sellerses' settlement demand of $265,000, explains Mr. Rosta. Accordingly, he insists that we may hold as a matter of law that Mr. Stalmack was the sole proximate cause of any damages UAIC incurred in excess of this sum.

The record before us does not permit this conclusion on summary judgment. We reiterate that the question of superseding causation is inherently fact-sensitive, suitable for review only by the jury unless there is only one inference to be drawn from the undisputed, material facts. We need not wade too far into the parties' arguments on this issue to see that such is not the case here.

The crux of Mr. Rosta's cross-motion is that he could not foresee Mr. Stalmack's specific acts of malpractice that led to UAIC's rejection of the Sellerses' reduced settlement demand. Mr. Rosta's emphasis on Mr. Stalmack's *acts* is misplaced. The foreseeability analysis in this context "focuses on the resulting harm suffered by a

24

plaintiff, not the foreseeability of each intervening act occurring in the chain of causation." *Collins*, 2016 WL 772638, at *4. Mr. Rosta need not have "foreseen each intervening act, omission, or combination thereof" to share in the responsibility for UAIC's ultimate damages. *Id.* Instead, the question of foreseeability asks whether a subsequent force "produces a different *result* that could not have been reasonably anticipated." *Id.* (emphasis in original) (quoting *Harper v. Guarantee Auto Stores*, 533 N.E.2d 1258, 1264 (Ind. Ct. App. 1989).

Here, it is undisputed that, at the time that Mr. Rosta's involvement in the State Court Litigation ended, UAIC faced exposure for bad faith and breach of contract claims arising from the state court's final entry of judgment in favor of the Sellerses in the sum of $823,344.00. As discussed previously, Mr. Rosta's misconduct was at least one proximate cause of this liability, that is, his failures to properly defend Mr. Wiley contributed to UAIC's potential liability for bad faith and breach of contract. Mr. Rosta also acknowledges that Mr. Stalkmack was retained at this point to mitigate this damages exposure contributed to by Mr. Rosta. Viewing these facts in the light most favorable to UAIC, reasonable jurors would be permitted to find that Mr. Rosta—an attorney specializing in insurance defense and bad faith litigation—could foresee that UAIC would face liability in excess of $265,000.00 when he neglected his attorney duties and caused a judgment of $823,344.00 to be entered against his client. *See Collins*, 2016 WL 772638, at *4; *Scott*, 916 N.E.2d at 258. We reiterate that any questions as to the

apportionment of fault between the various players involved here must be reserved for the jury.[14] *Dennerline*, 886 N.E.2d at 598.

For these reasons, we deny Mr. Rosta's request for an order holding as a matter of law that his liability is capped at $265,000.

## CONCLUSION

UAIC's motion for partial summary judgment [Dkt. 72] is **granted in part.** We hold that UAIC is entitled to summary judgment on the issue of whether Mr. Rosta committed legal malpractice. Whether and to what extent UAIC is at also fault, however, we leave to a jury to decided. Mr. Rosta's cross-motion for summary judgment [Dkt. 74] is **denied.**

IT IS SO ORDERED.

Date:      3/26/2021

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Samuel R. Ardery
BUNGER & ROBERTSON
sardery@lawbr.com

Michael E. Brown
KIGHTLINGER & GRAY, LLP (Indianapolis)
mbrown@k-glaw.com

Nicholas Gene Brunette
REMINGER CO. LPA (Indianapolis)
nbrunette@reminger.com

---

[14] Mr. Rosta also stresses that it was not reasonably foreseeable that the UAIC would not settle with the Sellerses for a reasonable value, which he identifies as $265,000. It is well-established, however, that there is no duty to settle. *See Am. Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1462 (7th Cir. 1996). A reasonable juror could thus find that it was foreseeable that UAIC would not, in fact, settle the case.

Gabriel Adam Hawkins
COHEN & MALAD LLP
ghawkins@cohenandmalad.com

Anthony L. Holton
REMINGER CO. LPA (Indianapolis)
aholton@reminger.com

Andrew W. Hull
HOOVER HULL TURNER LLP
awhull@hooverhullturner.com

Justin Kuhn
COHEN & MALAD LLP
+jkuhn@co
henandmalad.com

Irwin B. Levin
COHEN & MALAD LLP
ilevin@cohenandmalad.com

Christopher D. Wagner
HOOVER HULL TURNER LLP
cwagner@hooverhullturner.com